UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

SANDRA KAYE MELTON,

       Plaintiff,                Civil Action No. 2:16-cv-00027

vs.                        JUDGE ALETA A. TRAUGER
                            MAGISTRATE JUDGE PATRICIA T. MORRIS

SOCIAL SECURITY ADMINISTRATION,

       Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.     RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (Doc. 15), be **DENIED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and by Notice of Reference, this case was referred to the undersigned Magistrate Judge for the purpose of reviewing a final decision by the Commissioner of Social Security denying Plaintiff Sandra Kaye Melton's claim for Disability Insurance Benefits ("DIB") under

1

Title II, 42 U.S.C. § 401 *et seq.*, and Supplemental Security Income benefits ("SSI") under Title XVI, 42 U.S.C. § 1381 *et seq.* (Doc. 19). The matter is currently before the Court on Plaintiff's Motion for Summary Judgment. (Doc. 15).

On November 1, 2012 and November 9, 2012, Plaintiff filed applications for SSI and DIB, respectively, alleging a disability onset date of June 30, 2005.[1] (Tr. 204-17). The Commissioner denied her claims initially and on reconsideration. (Tr. 87-88, 120-21). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on November 26, 2014, before ALJ James Dixon. (Tr. 37-60). The ALJ issued a decision on March 26, 2015, finding Plaintiff not disabled. (Tr. 18-34). On March 4, 2016, the Appeals Council denied review, (Tr. 1-6), and Plaintiff filed for judicial review of that final decision on May 5, 2016. (Doc. 1). Plaintiff filed the instant Motion on October 5, 2016, (Doc. 15), and the Commissioner responded on November 2, 2016, (Doc. 18).

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of

---

[1] At the hearing, Plaintiff attempted to amend her alleged onset date to January 1, 2013, (Tr. 41), but the ALJ denied this request as moot in his written decision, (Tr. 21).

evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.     Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we condiser our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the

Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is at least eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled. (Tr. 21-29). At Step One, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2013, and had not engaged in substantial gainful activity in the interval between her alleged onset date of June 30, 2005, and her date last insured. (Tr. 23-24). At Step Two, the ALJ concluded that the following impairments qualified as severe: arthritis and hearing loss. (Tr. 24). The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (Tr. 24-25). Thereafter, the ALJ found that during the relevant time period

Plaintiff had the residual functional capacity ("RFC") to perform medium work except for the following limitations:

> lifting a maximum of about fifty pounds occasionally and twenty-five pounds frequently; standing and/or walking about six - eight hours in an eight-hour workday; sitting about six – eight hours in an eight-hour workday; unlimited pushing or pulling; frequent climbing ramps or stairs, bending, stooping, kneeling, squatting, crouching, and crawling; and occasional climbing ladders, ropes, or scaffolds.

(Tr. 25). At Step Four, the ALJ found Plaintiff did not have past relevant work. (Tr. 27). Proceeding to Step Five, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and thus Plaintiff was not disabled. (Tr. 28-29).

### E.    Administrative Record

#### 1.    Medical Evidence

The Court has reviewed Plaintiff's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.    Application Reports and Administrative Hearing

##### i.    Function Report

On December 14, 2012, Plaintiff filled out a Function Report which appears in the administrative record. (Tr. 274-81). She described her condition as causing extensive joint pain that interfered with sleep and everyday activities. (Tr. 274). Treatments such as steroid shots proved both ineffective and dangerous because they made her "heart jump all over my chest." (*Id.*). "I don't have the [energy] to do things like I did." (Tr. 275).

Despite these issues, her conditions did not interfere with any personal-care activities (*i.e.*, bathing, dressing, shaving, etc.), and she remained able to cook three times a week. (Tr. 275-76). She continued to clean and do laundry twice a week, though "I have to make myself [do so] sometimes." (Tr. 276). She went out every day but could not drive because "my hearing is bad and I was afraid to learn . . . ." (Tr. 277). She shopped for groceries once a month for thirty minutes, and handled her own finances. (*Id.*). She had no hobbies. (Tr. 278). She tended to avoid social activities outside her homestead because the activities made her "feel stiff" and her hearing problems made interaction more difficult. (*Id.*). Nevertheless, her children came to visit her once a week. (*Id.*). If she decided to go to church, she would "have my husband or kids . . . go with me because it's hard for me to hear. So they can tell me what was said." (*Id.*).

Prompted to mark abilities with which her conditions interfered, she marked: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, completing tasks, concentration, understanding, following instructions, and using her hands. (Tr. 279). "My joints hurt[] when I try and do any of the things listed." (*Id.*). She could walk three-hundred feet before needing fifteen-minutes' rest. (*Id.*). Though written instructions posed no hurdle for her, she was "not good" at following spoken instructions. (*Id.*). Summarizing her claim to disability, she wrote:

> My life has changed because of my condition. I can't work a 40 [hour] week anymore. I can barely work 2 days a week and that bothers me. I don't do things like I did [because] I hurt every day and I don't have the energy like I did. I can't take anything for it but [Tylenol because] my stomach won't let me. It's hard for me to move fast [because] my joints won't let me [because] I'm stiff. It's hard for me to keep a job [because] my hearing I can't

understand what they want me to do. I have to sit down a lot because I hurt and I get tired."

(Tr. 281). This concluded her Function Report.

## ii.  Plaintiff's Testimony at the Administrative Hearing

After Plaintiff voiced a request to amend her alleged onset date to January 1, 2013, (Tr. 41), the ALJ opened the hearing with an overview of Plaintiff's background. He noticed that Plaintiff "had eight previous applications for disability going all the way back to the '90s, including a previous unfavorable decision with a judge back in 1995." (Tr. 44). In the past, she worked as a cook at a school, a cook at a fast food restaurant, a dietary aide, and a housekeeper. (*Id.*). After establishing these details for the record, the ALJ asked Plaintiff what kept her from being able to work full-time. (Tr. 47). She identified "the pain in my back, my shoulders, and . . . the fatigue" as the main culprits for her difficulty, as well as "real bad muscle spasms" in her back and "arthritis in my shoulders . . . my knees, my hands, [and] my feet." (*Id.*).  "My right ear's completely gone," and her doctor said "a hearing aid wouldn't help it at all," though the option remained for her left ear. (Tr. 48). "I've had surgery done on my left ear." (*Id.*).

Plaintiff then indicated that her arthritis ran in her family, and significantly affected her shoulders and back. (Tr. 49-50). She estimated an ability to walk or stand for about thirty minutes before needing to sit, and an ability to lift up to five pounds. (Tr. 50). In June or July 2014, she started receiving joint injections in her shoulders. (Tr. 51). She also took Tylenol and Ibuprofen, but "I've got to be careful about what I take because my stomach is so sensitive to medication." (Tr. 52). Although her doctor prescribed a muscle

relaxer, for instance, "I don't take it very often because it makes me feel really funny." (*Id.*). She worked a part-time job for four hours at a time, four nights a week, and when she returned home would do "a few little things around the house, . . ." (Tr. 53).

### iii.      The VE's Testimony at the Administrative Hearing

The VE began by classifying Plaintiff's past work: a "maid, housekeeper," a "short-order cook," a "traditional cook," and a "dietary aide." (Tr. 55). Thereafter, the ALJ posed his first hypothetical: "[A]ssume a hypothetical individual the same age, education, and past work experience as [Plaintiff], with the following physical limitations . . . [of] lifting and/or carrying including up to 50 pounds occasionally, 25 pounds frequently. Standing and/or walking with normal breaks about six out of eight. Sitting with normal breaks about six out of eight. Unlimited pushing, pulling of the hand and foot controls within those exertional limitations. Frequent postural activities except occasional climbing of ladders, ropes, or scaffolds. There are no manipulative or visual limitations. Avoid all exposure to very noisy environments such as heavy traffic, manufacturing plant noises. Would those limitations allow for any of the past jobs that [Plaintiff] has done?" (Tr. 56). The VE indicated that such an individual could perform all of Plaintiff's past jobs, and that other jobs existed which she could perform as well, including: "hand packager" (with 3,300 local jobs and 127,000 national jobs), "machine cleaner" (with 3,400 local jobs and 151,000 national jobs), and "laundry laborer" (with 10,000 local jobs and 437,000 national jobs). (Tr. 56-57). The VE also clarified that "none of those three jobs would be negatively impacted by the noise limitation in this RFC." (Tr. 57).

For his second hypothetical, the ALJ provided for "lifting and carrying less than 10 pounds frequently, 10 to 20 pounds occasionally. Standing, walking up to 30 minutes at one time without interruption. Total of three out of eight each. Sitting up to 30 minutes at one time without interruptions for a total of three out of eight hours. Able to walk two city blocks without rest or significant pain. Will need to shift positions at will from sitting, standing, or walking approximately hourly for 15 minutes each before returning to work. No manipulative limitations. Would those limitations allow for any work, past or otherwise?" (Tr. 57-58). The VE initially said they "would allow for sit/stand positions in the light exertional level," but clarified that in fact "no jobs" would exist for such an individual. (Tr. 58-59).

## F.      Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into various categories, "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).    Both    "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the

impairment(s), and physical and mental restrictions." *Id.*. When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician, in contrast, receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved

to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996). Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.

1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective confirming evidence forces the ALJ to consider the following factors:

| | |
|---|---|
| (i) | [D]aily activities; |
| (ii) | The location, duration, frequency, and intensity of . . . pain; |
| (iii) | Precipitating and aggravating factors; |
| (iv) | The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms; |
| (v) | Treatment, other than medication, . . . received for relief of . . . pain; |
| (vi) | Any measures . . . used to relieve . . . pain. |

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

The claimant must provide evidence establishing her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). A hypothetical question to the VE is valid if it includes all credible limitations developed prior to Step Five. *Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 9, 2009).

### G. Analysis

Plaintiff furnishes two discrete arguments in her Motion for Summary Judgment: (1) the ALJ should have included "appropriate and supported limitations" in Plaintiff's

hearing abilities in her RFC, (Doc. 16 at ID 762); and (2) the ALJ should have granted more weight to the record opinion from Dr. King, Plaintiff's treating physician, than he did to a non-examining physician "who had not had the ability to review more recent material evidence," (*Id.* at ID 765). I address each argument in turn.[2]

## 1. Hearing Limitations

Plaintiff first contends the ALJ erred in "fail[ing] to include any limitation in the RFC which would accommodate the work-related restrictions" her bilateral hearing loss posed. (Doc. 16 at ID 762). She suggests evidence from Dr. Williams, Dr. Hartmann, Mr. Hardison, and Dr. Valerio supports the proposition that Plaintiff "would lose most if not all ability to understand speech or communicate in situations even where the noise level is fairly low," and perhaps as low as 50 decibels ("dB"). (*Id.* at ID 763). This error was harmful, Plaintiff suggests, because although "the ALJ did include a limitation for avoidance of very noisy environments in the hypothetical to the VE which resulted in the identified jobs at Step 5, this limitation does not comport with the evidence that shows

---

[2] The hearing transcript at issue, alongside various portions of the record, suggest Plaintiff received an adverse disability finding in the past. (Tr. 44) ("The file indicates you've had eight previous applications for disability going all the way back to the '90s, including a previous unfavorable decision with a judge back in 1995."). No such decision appears in the record, and neither party nor the ALJ's written decision makes mention of any prior disability determination. Such prior determinations—rendered after a claimant had the right to be heard before an impartial decision-maker—typically carry *res judicata* force into the future, and mandate the application of a different standard to the disability determination: whether new and material evidence shows a deterioration in condition sufficient to compel a finding of disability. *See* AR 98-4(6), 1998 WL 283902, at *3 (S.S.A. June 1, 1998) (acquiescing to *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997)). Even assuming the ALJ erred in failing to apply the *res judicata* standard to the case at hand, however, would not require remand. Plaintiff's burden under the standard applied by the ALJ is more lax—an adverse finding thereunder would, *a fortiori*, remain adverse under the more exacting *res judicata* standard. For this reason, I decline to address this issue any further.

[she] would require a much quieter work environment." (*Id.* at ID 764). The jobs the VE identified in response to the ALJ's "very noisy" hypothetical, she notes, involve work environments with moderate noise levels, and "[i]n comparing the illustrative examples of a moderate noise intensity level with those specified as being around 50 dB in loudness, it becomes highly questionable whether [Plaintiff] would in fact be able to work in" such an environment. (*Id.*).

Defendant concedes the ALJ's omission of hearing limitations in the RFC was error, but maintains it was harmless. (Doc. 18 at ID 819-23). As Defendant correctly notes, the transcript amply demonstrates the ALJ considered Plaintiff's hearing impairments. *E.g.*, (Tr. 42-43) ("Now, I know that [Plaintiff] has some diminished hearing, and she's having a problem hearing me. But maybe y'all need to turn up the volume on that end."); *see also* (Tr. 48-49, 57). Moreover, the ALJ included a hearing limitation—namely, "[a]void all exposure to very noisy environments such as heavy traffic, manufacturing plant noises"—in the hypothetical question he ultimately adopted in his written decision. (Tr. 56). When presented with this hypothetical, the VE listed the same jobs the ALJ found Plaintiff capable of performing in his written decision. *Compare* (Tr. 56-57), *with* (Tr. 28). The ALJ even asked specifically whether those jobs "would be negatively impacted by the noise limitation in this RFC," and the VE indicated they would not. (Tr. 57). The ALJ may have omitted this limitation from his written decision, but the VE "concluded that there were jobs in the area, taking into considerations the limitation[], that could be performed," rendering this error harmless. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001); *accord, e.g.*, *Rogers-Lee v. Comm'r of Soc.*

*Sec.*, No.2:14-CV-11415, 2015 WL 5162269, at *9 (E.D. Mich. July 21, 2015) ("The Sixth Circuit has held that, even where an ALJ did not discuss the opinion of a treating physician, such an error was harmless where the hypothetical to the VE took the relevant limitations into consideration."), *R.& R. adopted,* No. 14-CV-11415, 2015 WL 5159750 (E.D. Mich. Sept. 2, 2015); *Macielak v. Comm'r of Soc. Sec.*, No. 13-CV-10148, 2013 WL 6839292, at *10 (E.D. Mich. Dec. 27, 2013) (same).

To this, Plaintiff suggests that in any case, such a limitation was ineffective in light of Dr. Williams's finding that "being placed in an environment where the noise level was around 50 dB reduced [Plaintiff's] understanding ability to zero percent." (Doc. 16 at ID 763) (citing (Tr. 611)). Put another way, Plaintiff avers the avoidance of "very loud" environments would not be enough. I must note, however, that the record does not corroborate Plaintiff's interpretation of this raw medical evidence. *Compare* (*Id.*), *with* (Tr. 611) ("Word Recognition: Excellent bilaterally at most comfortable listening levels. Binaural word recognition testing in the sound field (50dB HL) confirmed complaints of reduced understanding ability."). Instead, the ALJ relied on those medical opinions which reviewed Dr. Williams's report and interpreted it as indicating difficulty hearing in "very noisy" environments, or those with "concentrated exposure" to noise. (Tr. 82, 85, 98). As I explain in more detail below, the ALJ considered the entire record and was permitted to weigh this evidence as he did; Plaintiff fails to convincingly show she needs a more severe limitation.

For these reasons, the ALJ's error in failing to include a bilateral hearing limitation in his RFC was harmless, and substantial evidence bolsters his opinion on this front.

### 2.     Weight Accorded Dr. Kahlil

Plaintiff next avers the ALJ erred in assigning "only little weight" to Dr. King's opinion while relying instead on "the opinion of a non-examining physician." (Doc. 16 at ID 765). She summarizes the reasons given the ALJ for his weight assignment as to Dr. King—namely: (i) inconsistency between his findings and Plaintiff's work history, (ii) lack of objective evidence, (iii) conservative treatment, and (iv) Plaintiff's delay in seeking treatment for her back pain—and challenges each one. (*Id.* at 766). Essentially, Plaintiff contends the ALJ cherry-picked the evidence to manufacture good reasons for discounting Dr. King's opinion. Further, "[t]he propriety of the ALJ's treatment of the evidence is even more suspect given [her] request to amend the alleged onset date from June 30, 2005 to January 1, 2013," given "the evidence he cited as the sole basis for asserting Dr. King's opinion was unsupported would essentially be irrelevant, since it was from 4 or 5 years prior to the amended onset date." (*Id.* at ID 768).

Evaluating medical source statements requires considering factors such as the nature of the source's examining relationship with the client, 20 C.F.R. § 416.927(c)(1), the source's treatment relationship with the client, *id.* § (c)(2), the supportability of the source's opinion, *id.* § (c)(3), the consistency of the opinion with the record as a whole, *id.* § (c)(4), whether the source is a specialist opining on areas within her specialty, *id.* § (c)(5), as well as "any factors" the claimant or others "bring to [the Commissioner's]

attention, or of which [the Commissioner] is aware, which tend to support or contradict the opinion," *id* § (c)(6). The ALJ "will always give good reasons. . . for the weight" given a "*treating* source's opinion." *Id* § (c)(2) (emphasis added). The ALJ, however, need not give 'good reasons' with respect to 'other sources'—rather, he "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). There remains an important "distinction between what an adjudicator must consider and what the adjudicator must explain." *Id.*

A review of the ALJ's rationale shows she supplied good reasons for assigning Dr. King's opinion little weight. She determined that Dr. King's findings would have precluded "even limited part-time work," which Plaintiff unquestionably held from 2005 to 2013. (Tr. 26-27). Though Plaintiff takes umbrage with such finding—(Doc. 16 at ID 766) ("[T]he ALJ has not provided any explanation as to why he believed Dr. King's opinion was inconsistent with [Plaintiff's] part time work[.]")—the ALJ plainly relied on the VE's testimony that Dr. King's RFC would have precluded all work, and that two of Plaintiff's past part-time jobs required lifting in excess of the limits in Dr. King's RFC assessment. *See* (Tr. 59) ("no jobs" in the national economy for an individual with the limitations included in Dr. King's September 2014 RFC). *Compare* (Tr. 55) (describing the jobs "traditional cook" and "dietary aide" as requiring "medium" exertion), *and* 20 C.F.R. § 404.1567(c) ("Medium work involves lifting no more than 50 pounds at a time

with frequent lifting or carrying of objects weighing up to 25 pounds."), *with* (Tr. 700) (limiting Plaintiff to occasionally lifting no more than 20 pounds). The language used to convey the ALJ's finding—namely, "[t]hese limitations would leave the claimant unable to sustain even limited part-time work," (Tr. 26)—while imprecise, seems impliedly aimed at noting inconsistency between Plaintiff's *actual* past work and Dr. King's RFC. This remains a valid reason to discount Dr. King's findings.

The ALJ also reasoned that Dr. King grounded his drastic findings on mild objective evidence from April 2008, and the limited, decidedly-conservative treatment in the year that followed. (Tr. 27). Plaintiff falsely paints this rationale as the ALJ's *reliance* on "a few discrete, isolated pieces of evidence from 2008 or 2009" to undermine Dr. King's opinion, (Doc. 16 at ID 767), when in fact the inverse is true. Indeed, contrary to Plaintiff's lamentations—*e.g.*, (Doc. 16 at ID 767) ("The ALJ neglected to mention that other treatment notes from Dr. King, particularly those from 2013 and 2014, showed consistent objective signs including decreased neck range of motion and left/bilateral shoulder tenderness.")—the ALJ expressly discussed a good deal of the most recent evidence of record, illustrating its inconsistency with Dr. King's findings, (Tr. 26) (expressly discussing records from 2013 and 2014, and citing Exhibits 6F, 12F, 14F, 15F, 16F, 19F, and 20F). The record validates his conclusion as to Dr. King's RFC. *See, e.g.*, (Tr. 84, 100, 117, 414, 437, 612, 655, 667) (mild objective findings); (Tr. 69, 99, 349, 366, 395, 398, 401, 403, 415, 418, 421, 424, 431, 434, 442, 463, 466, 469, 471, 476, 483-84, 490, 501, 524, 527, 541, 567-68, 597, 680, 683, 688) (full range of motion in all or most major muscle groups); (Tr. 388, 394, 400, 402, 417, 420, 423, 427, 430, 433, 442,

447, 456, 463, 466, 469, 471, 483-84, 490, 501, 527, 541, 567-68, 662, 669) (little or no joint pain); (Tr. 67, 78, 99, 110, 114, 606) (normal or relatively uninhibited activities of daily living). Plaintiff's tangential argument—that the ALJ improperly denied Plaintiff's motion to amend her onset date, then relied entirely upon evidence from before that date, (Doc. 16 at ID 768)—is similarly debunked by the ALJ's holistic written analysis. *Cf. Nichols v. Comm'r of Soc. Sec.*, 575 F. App'x 664, 665 (6th Cir. 2014) ("[A]ny error in failing to explicitly consider the amended onset date was harmless because the ALJ recognized that Nichols changed age categories in 2009 . . . she considered whether the change affected the disability determination, and she determined that Nichols was not disabled at any time between November 15, 2008, and the date of the ALJ's decision."). In sum, the ALJ supplied good reasons for discounting Dr. King's opinion.

Plaintiff also argues the ALJ should not have accorded State Agency physician Dr. Rotker significant weight, as she performed her examination on June 27, 2013, and therefore "could not have the ability to review pieces of material evidence when making her assessment, including both opinions from Dr. King and multiple treatment notes from Dr. King and other sources that evidenced an escalation of [Plaintiff's] musculoskeletal." (Doc. 16 at ID 768). As discussed above, however, the ALJ considered the evidence post-dating Dr. Rotker's evaluation; so long as the ALJ grants "'some indication'" she considered facts not before a non-examining source who "did not review a complete case record," reliance on such source will not result in error. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).

Because the ALJ furnished reasons "sufficiently specific to make clear to any subsequent reviewers" the weight he "gave to the treating source's medical opinion and the reasons for that weight," the ALJ's weight-assignment as to Dr. King is supported by substantial evidence. SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The Court should find Plaintiff's corresponding misgivings unpersuasive.

### H.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (Doc. 15), be **DENIED**.

## III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  February 20, 2018               S/ PATRICIA T. MORRIS
                                       PATRICIA T. MORRIS
                                       UNITED STATES MAGISTRATE JUDGE
                                       SITTING BY SPECIAL DESIGNATION