# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| SANDRA KAYE MELTON,  )<br>  )<br>　Plaintiff,  )<br>  )<br>v.  )<br>  )<br>NANCY A. BERRYHILL,  )<br>**Deputy Commissioner of Operations of**  )<br>**the Social Security Administration,**[1]  )<br>  )<br>　Defendant.  )  | Case No. 2:16-cv-00027<br>Judge Aleta A. Trauger |

## MEMORANDUM

Plaintiff Sandra Kaye Melton brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Social Security Administration's denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Social Security Act.

On February 20, 2018, the magistrate judge issued a Report and Recommendation ("R&R") (Doc. No. 20), recommending that the decision of the Social Security Administration ("SSA") be affirmed and that the plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 15) be denied. The plaintiff has filed timely Objections (Doc. No. 21), to which the SSA has responded (Doc. No. 22). For the reasons discussed herein, the court will overrule the

---

[1] Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. However, her acting status ended as a matter of law in November 2017 pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq.*, and Berryhill returned to her position of record as Deputy Commissioner of Operations. According to the agency's Social Security Administration's website, "[i]n accordance with the agency's Order of Succession, [Berryhill] continues to lead the Social Security Administration as we await the nomination and confirmation of a Commissioner." https://www.ssa.gov/agency/commissioner.html (last accessed March 26, 2018).

Objections, accept and adopt the R&R, deny the plaintiff's Motion for Judgment on the Administrative Record, and affirm the SSA's decision.

I.   **Procedural History**

Plaintiff Sandra Kaye Melton filed applications for DIB and SSI on November 1, 2012, alleging disability beginning on June 30, 2005 due to arthritis, stomach problems, hearing problems, and heart problems. (Administrative Record ("AR") 265,[2] Doc. No. 12.) These applications were denied initially (AR 87–88) and on reconsideration (AR 120–21). After a hearing, ALJ James Dixon issued an unfavorable decision on March 26, 2015. (AR 16–29.) The ALJ also denied Melton's request to amend her alleged onset date to January 1, 2013 as moot, since he found that Melton was not disabled for any of the period from June 30, 2005 to the date of the decision. (AR 21, 41.)

The ALJ accepted as a factual matter that Melton suffered from severe impairments, including arthritis[3] and hearing loss, but that these impairments did meet or equal the severity of a listed impairment. (AR 24–25.) The ALJ found that Melton had the residual functional capacity ("RFC") to perform medium work with some limitations and, more specifically, that she had the ability to lift and carry fifty pounds occasionally and twenty-five pounds frequently, to stand or

---

[2] Page number references to the administrative record are consistent with the Bates stamp number at the lower right corner of each page.

[3] It is curious that the ALJ accepted the plaintiff's statement that she has arthritis. Although the plaintiff clearly complained of diffuse joint pain and "arthritis," no medical findings support an actual diagnosis of osteoarthritis or rheumatoid arthritis. (*See, e.g.*, AR 540, 542 (noting that the plaintiff complained of "arthritic pain" and low back pain in April 2008, but that she had "no OA [osteoarthritis] by X-ray" and "no evidence of Rheumatoid arthritis"); *id.* 646, 648 (noting that the plaintiff complained in March 2014 of pain mostly in her upper back, neck, and shoulders, but that she had "had multiple evaluations for generalized joint paint that have not identified any specific cause. Her RF [rheumatoid factor], ANA [Antinuclear Antibody] and sed [sedimentation] rates [all tests for rheumatoid arthritis] are always negative," and orthopedic X-ray of shoulder and C spine showed "no obvious abnormalities"); *id.* 655 (normal MRI of shoulder).) The plaintiff's complaint that she suffers from arthritis appears simply to be short-hand for "joint pain."

walk six to eight hours in an eight-hour workday, to frequently climb ramps and stairs, bend, stoop, kneel, squat, crouch, and crawl, and to occasionally climb ladders, ropes, and scaffolds. (AR 25.) Although the plaintiff had worked part-time for a number of years and was still working part-time as of the date of the hearing, the ALJ found that the work did not constitute substantial gainful employment and, therefore, that the plaintiff had no past relevant work. Nonetheless, based on the RFC and the testimony of a vocational expert ("VE") at the hearing, the ALJ ultimately concluded that Melton was able to perform other work that existed in the national economy, including the jobs of hand packer, machine cleaner, and laundry laborer, and, therefore, that she was not disabled. (AR 28.)

The Appeals Council denied review on March 4, 2016 (AR 1–4), making the ALJ's decision the final Agency decision.

The plaintiff filed her Complaint initiating this action on May 5, 2016. (Doc. No. 1.) The SSA filed a timely Answer (Doc. No. 11), denying liability, and a complete copy of the Administrative Record (Doc. No. 12). On October 5, 2016, the plaintiff filed her Motion for Judgment on the Administrative Record and supporting Brief (Doc. Nos. 15. 16), which the SSA opposed (Doc. No. 18). On February 20, 2018, the magistrate judge issued her R&R (Doc. No. 20), recommending that the plaintiff's motion be denied and that the SSA's decision be affirmed.

The plaintiff filed Objections to the R&R (Doc. No. 21); the SSA has filed a Response in opposition to the Objections (Doc. No. 22).

## II. Standard of Review

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(1)(C); 28 U.S.C. §

636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). Objections must be specific; a general objection to the R&R is not sufficient and may result in waiver of further review. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). In conducting its review of the objections, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In Social Security cases under Title II or Title XIV, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and, as such, entitled to benefits. 42 U.S.C. §§ 1383(c), 405(h). The court's review of the decision of an administrative law judge ("ALJ") is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see* 42 U.S.C. § 405 (g) (2012) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal citations omitted). "The substantial evidence standard . . . presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). "Therefore, if substantial evidence supports an ALJ's decision, the court defers to that finding, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Id.* (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### III. Factual Background

Because the ALJ did not provide a complete summary of the evidence in the record in the R&R, the court incorporates here that portion of the statement of facts set forth in the plaintiff's Memorandum in Support of Motion for Judgment on the Administrative Record that is relevant to the plaintiff's Objections:

> Melton was born in 1963, making her 41 years old at the original alleged onset date, 49 years old at the filing date and the amended onset date, and 51 years old at the date of the ALJ's decision. T 21, 27, 29, 243. Melton reported obtaining her GED with a history of special education when in school. T 44, 266. The ALJ found she had no past relevant work. T 27.
>
> *Hearing Testimony*
>
> At the hearing on November 26, 2014, Melton testified she works part-time as an aide/housekeeper in a nursing home; she typically works 15 or 16 hours per week and even that wears her out physically. T 45–46, 51. She would be unable to work 8 hour days and had to change her work schedule from three 7-hour days per week to four 4-hour days per week due to her impairments. T 51. She has pain all over her body as a result of muscle spasms in her back and arthritis in her shoulders, knees, hands, and feet. T 47. She has no hearing in her right ear and has been told a hearing aid will not help. T 48. She also has hearing loss in her left ear and underwent surgery in her left middle ear over 20 years prior. T 48–49. She can walk 30 minutes at one time, stand 30 to 45 minutes at one time, and lift or carry 5 pounds. T 50. She takes Tylenol and ibuprofen for her pain, but her stomach is sensitive to these medications; she also uses a topical cream for pain relief, but she is unable to take her oral muscle relaxers because they make her feel strange. T 52. In terms of daily activities, she does not shop or go out anymore other than to work. T 53.
>
> The VE testified that Melton would be able to perform her identified past work (which the ALJ admitted was not past relevant work due to earnings which were below substantial gainful activity) and work in jobs such as hand packer, machine cleaner, and laundry laborer with the limitations in the RFC and avoidance of very noisy environments. T 56–57. With the limitations included in the opinion from treating physician Dr. King, the VE first testified that she would be able to do sedentary jobs like office helper, but then indicated that the range of sitting Dr. King opined was not sufficient to allow the performance of sedentary work. T 58. The VE additionally testified Melton would be unable to do the identified jobs if she was limited to occasional handling or the need for additional breaks every hour. T 59.

*Medical Evidence*

. . . .

      b. <u>Arthritis</u>

On September 13, 2010, Melton reported joint pain and treating physician Matthew King, M.D., observed she had a thin body habitus and right middle paraspinal muscle tenderness. T 444–45. Dr. King noted her lower back pain was worsening and administered a Depo-Medrol injection. T 446. Imaging from September 24, 2010 showed mild-to-moderate levoscoliosis of the thoracic spine and normal findings in the lumbar spine and bilateral hands. T 437. Dr. King noted that Melton had a weakly positive ANA result back in 2008. T 442. On June 13, 2011, Melton continued to report diffuse joint pain, though testing was negative for rheumatoid arthritis and lupus. T 405, 407. On April 13, 2012, Melton reported ankle pain with swelling and Nurse Practitioner Fryar administered a Depo-Medrol injection after observing swelling in her right ankle. T 391–92. She was again noted to have a negative rheumatoid factor on October 8, 2012, though she reported continued diffuse joint pain. T 354, 356.

On January 5, 2013, consultative examiner Dr. Hartmann observed that Melton had diminished range of motion in her dorsolumbar spine, though she had normal range of motion in her shoulders and neck. T 597. Dr. Hartmann opined Melton could lift 10 pounds occasionally, stand and walk frequently, sit continuously, and perform frequent postural activities. *Id.*

On August 8, 2013, Dr. King observed decreased range of motion with left shoulder abduction. T 689. On August 16, 2013, Dr. King opined that, due to joint pain, Melton would frequently experience symptoms severe enough to interfere with her attention and concentration for simple tasks, would require shifting positions at will, and would require unscheduled 15-minute breaks every 2 hours. T 642. Dr. King opined she could sit 30 minutes at one time and 3 hours total, stand or walk 30 minutes at one time and 3 hours total, lift up to 20 pounds occasionally and less than 10 pounds frequently, and would likely be absent from work once or twice per month. T 642–43.

On March 4, 2014, Melton reported upper back pain and Rita Clark, N.P., observed she had multi-joint pains including back pain with a positive right straight leg raise as well as reports of frequent episodes of numbness below the waist. T 650–51. On March 27, 2014, Dr. King noted that a request for an MRI of Melton's upper and lower spine had been denied though she reported continuing pain in her low back and shoulder. T 646. Dr. King observed decreased range of motion in her neck, mild epigastric tenderness, mid-scapular border tenderness in the left shoulder, and supraspinatus testing that suggested tendinosis or possible impingement. T 648. Dr. King administered an injection for her left shoulder. *Id.* On March 31, 2014, Melton continued to report pain in her back, neck, and bilateral shoulders. T 693. On May 22, 2014, Dr. King observed decreased neck

range of motion, mild epigastric tenderness, and tenderness in the left shoulder medial scapular border; Dr. King administered another shoulder injection. T 675. An MRI of her left shoulder on July 29, 2014 revealed normal findings. T 655. On August 22, 2014, Melton reported experiencing some relief of her pain with the shoulder injections, though Dr. King observed decreased neck range of motion, mild epigastric tenderness, tenderness in the bilateral medial scapular borders of the shoulders, and some curvature of the thoracic spine. T 661.

On September 28, 2014, Dr. King issued another opinion which contained most of the same limitations as his previous opinion, except he indicated Melton now needed unscheduled 15-minute breaks hourly throughout the workday. T 699–700. Dr. King also specified that these limitations had existed since 2008. T 701.

(Doc. No. 16, at 4–8.)

### IV. The Plaintiff's Objections

The plaintiff posits what amounts to a single objection: that the magistrate judge erred in finding that the ALJ gave good reasons for assigning little weight to the opinion of treating physician Dr. Matthew King and in ascribing reasons to support the ALJ's opinion that the ALJ himself did not actually provide. Specifically, the plaintiff argues that (1) the ALJ failed to explain how Dr. King's opinion was inconsistent with the plaintiff's part-time work; and (2) the ALJ failed to explain how the record was inconsistent with Dr. King's opinion, in particular because he referenced only treatment notes from 2008 and 2009 rather than the more recent and probative treatment notes from 2013 and 2014.

In response, the defendant relies on the arguments asserted in her original brief in response to the Motion for Judgment on the Administrative Record and further argues that both the Commissioner (in defending the ALJ's decision) and the court (in considering whether the ALJ's decision is supported by substantial evidence) may cite to and rely upon other evidence in the record that further supports the ALJ's factual findings. (Doc. No. 22, at 1–2 (citing *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 438 n.2 (6th Cir. 2012); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001)).) The court notes that the cited cases are not particularly

helpful, because they primarily address the question of whether an ALJ's decision is supported by substantial evidence in the record, rather than the requirement that an ALJ give good reasons for rejecting the opinion of a treating physician.

**V.     Analysis**

    *A.     The Regulatory Requirements*

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)). Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Generally, a treating-source opinion must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ finds, based on these criteria, that a treating-source opinion is not entitled to controlling weight, then the ALJ must weigh the opinion based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)–(6). Even if the treating physician's opinion is not given controlling weight, "there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)).

If the treating source's opinion is not given controlling weight, the ALJ must give "good reasons" for discounting the amount of weight given. 20 C.F.R. § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make

clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Because the reason-giving requirement exists to "ensur[e] that each denied claimant receives fair process," the Sixth Circuit has repeatedly held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243).

### B.  The ALJ's Rejection of the Treating Physician's Opinion

In reaching his conclusion that the plaintiff had the RFC to perform medium work, with certain limitations, the ALJ accorded little weight to the opinion of treating physician Dr. King but significant weight to the opinion of the non-examining State Agency medical consultants. (AR 26–27.) It is undisputed that Dr. King was a treating source who treated the plaintiff from sometime in 2008 (*see* AR 544) through at least August 2014 (*see* AR 661). In rejecting Dr. King's opinion, the ALJ stated as follows:

> The claimant asserts that she is disabled and unable to work primarily because of shoulder pain, back pain, back spasms, arthritic pain in her hands, and difficulty twisting her neck. The claimant asserts her daily activities are restricted. She claimed she did little, other than her part time work. She said she did not perform much housework or shopping. She uses over-the-counter analgesics, a pain relief cream, and an occasional muscle relaxer. The claimant has taken a variety of prescription medications including Robaxin, Sulidac, Mobic, and others. (Exhibit 15F). She claimed she can only lift about five pounds. She said she takes extra breaks at work and has changed from seven-hour shifts to only four-hour shifts.
>
> The claimant . . . has medically determinable impairments that could cause such

complaints. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

A number of her complaints are inconsistent on their face. She testified she could not lift and carry more than five pounds, but her admitted work activity involves considerably heavier lifting, at least to the level of medium exertion (e.g., lifting a maximum of about fifty pounds occasionally and twenty-five pounds frequently . . . ). The severity of her complaints far exceed[s] what would reasonably be expected in light of the objective findings. [Consultative examiner] Dr. Hartmann found the claimant retained full range of motion in the shoulders, elbows, knees, and ankles. (Exhibit B6F). A 2014 MRI of the shoulder was within normal limits. (Exhibit B16F). There are no clear x-ray or MRI results indicating severe spinal or joint abnormalities. (*See*, Exhibits B3F, B12F, B14F, and B15F).

August 28, 2014, Dr. King essentially opined that the claimant has the following limitations: lifting a maximum of about ten–twenty pounds occasionally and ten pounds frequently; standing and/or walking for a maximum of about thirty minutes at a time; standing and/or walking about three hours in an eight-hour workday; able to walk about two blocks without rest or significant pain; sitting about three hours in an eight-hour workday; and hourly breaks of about fifteen minutes each to shift positions (Exhibit B19F). He asserted these limitations have been effective since 2008. (Exhibit B20F). He found similar limitations in an August 16, 2013 assessment. (Exhibit B14F).

. . . . These limitations would leave the claimant unable to sustain even limited part-time work. The claimant's admitted activity level contradicts such findings. She engaged in part-time work in every year at least from 2005–2013. (Exhibit B3D).

His own treatment notes do not show the kind of significant objective findings reasonably expected to accompany the kind of debilitating limitations he described in his reports. (Exhibit B20F). He described only signs of mild arthritis in the hands and shoulders in 2008, but the x-rays did not show any abnormalities. Treatment was limited to over-the counter anti-inflammatories. The next mention of treatment for back or joint pain does not appear to have been until August and September 2009. For these reasons, his opinion is given little weight.

(AR 26–27.)

### C. *Whether the ALJ Gave Good Reasons*

The magistrate judge concluded that the ALJ provided good enough reasons for his rejection of Dr. King's opinion, namely (1) that Dr. King's findings would have precluded the plaintiff's ability to perform the part-time work she was already performing, noting that the

language used to convey the ALJ's finding, "while imprecise, seems impliedly aimed at noting inconsistency between Plaintiff's *actual* past work and Dr. King's RFC" (Doc. No. 20, at 20); and (2) that the ALJ did not *only* rely on Dr. King's treatment notes from 2008 and 2009 but instead "expressly discussed a good deal of the most recent evidence of record, illustrating its inconsistency with Dr. King's findings" (*id.* (referencing AR 26 as "expressly discussing records from 2013 and 2014, and citing Exhibits 6F, 12F, 14F, 15F, 16F, 19F, and 20F").) The magistrate judge further concluded that the "record validates the [ALJ's] conclusion as to Dr. King's RFC." (*Id.* (citations to the record omitted).)

Although this case presents a very close call, the court finds that the magistrate judge did not err in reaching the conclusion that the ALJ gave sufficiently good reasons for rejecting the treating physician's assessment of the plaintiff's ability to do work-related activities. With respect, first, to the plaintiff's assertion that the ALJ failed to explain how Dr. King's opinion was inconsistent with the plaintiff's part-time work, the court agrees with the magistrate judge that the ALJ's statement that Dr. King's opinion—that, among other things, the plaintiff could lift only a maximum of ten to twenty pounds occasionally, could never lift as much as fifty pounds, and could not stand or walk more than thirty minutes at a time or for more than three hours in an eight-hour workday—"would leave the claimant unable to sustain even limited part-time work" (AR 26) inescapably cross-referenced his finding, in the same section of the opinion, that the plaintiff's "admitted work activity involves considerably heavier lifting, at least to the level of medium exertion (e.g., lifting a maximum of about fifty pounds occasionally and twenty-five pounds frequently)." (*Id.*) In other words, the ALJ adequately explained how Dr. King's opinion as to the plaintiff's RFC conflicted with her actual work activity.

In addition, although the ALJ's opinion lacked the desired precision, insofar as it

specifically referenced only medical treatment notes from 2008 and 2009, the ALJ also noted that a "2014 MRI of the shoulder was within normal limits" and stated that "[t]here are no clear x-ray or MRI results indicating severe spinal or joint abnormalities." (*Id.* (citing Exhibits B3F (Dr. King's office treatment records dated 1/2/2007 to 11/13/2007), B12F (Dr. King's office treatment records dated 1/25/2013 to 6/5/2013), and B15F (Dr. King's office treatment records dated 3/4/2014 to 3/27/2014)).[4]) Thus, when the ALJ states, three paragraphs later, that Dr. King's "own treatment notes do not show the kind of significant objective findings reasonably expected to accompany the kind of debilitating limitations he described in his reports" (AR 27), it is clear that he is incorporating Dr. King's medical treatment notes from 2007, 2013 and 2014, as well as his findings in 2008 and 2009. Moreover, while the plaintiff is correct that the plaintiff's complaints of shoulder, back, and joint pain increased in 2013 and 2014, the objective medical findings did not change significantly, nor did Dr. King's prescribed course of treatment.

Although the ALJ did not expressly reference the length, frequency, nature, and extent of Dr. King's treatment relationship, his references to the medical record as a whole reflect that he was aware that Dr. King was the treating physician and that he had a significant treatment relationship with the plaintiff. Moreover, the ALJ clearly considered the extent to which Dr. King's opinions were consistent with the record as a whole and whether they were supported by relevant evidence. The ALJ satisfied the requirement that he give good reasons for according little weight to Dr. King's assessment of the plaintiff's physical limitations. Further, the ALJ's reasons are "supported by the evidence in the case record, and [are] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at

---

[4] The ALJ also cited B14F, a Physical RFC Assessment by Dr. King dated 8/16/2013. This reference appears to be an error, as it does not support the ALJ's statement.

*5.

## VI. Conclusion

For the foregoing reasons, the court will overrule plaintiff's Objections (Doc. No. 21); accept and adopt the magistrate judge's recommendations (Doc. No. 20); deny the plaintiff's motion for judgment (Doc. No. 15); and affirm the SSA's decision.

An appropriate order is filed herewith.

ENTER this 29th day of March 2018.

							_____
							ALETA A. TRAUGER
							United States District Judge